## LA SOCIETE ANONYME DE L'UNION DES PAPETERIES v. MARKS et al.

(Supreme Court, General Term, First Department.   January 13, 1893.)

PRINCIPAL AND AGENT—EVIDENCE OF AGENCY.

On the question whether defendants were in possession of goods imported from plaintiff as owners, or as agents, there was in evidence a declaration by defendants that "we, the undersigned, [defendants,] acknowledge by these presents that we are only the agents of [plaintiff.] We therefore give and acknowledge to said company [plaintiff] an absolute right on all merchandise consigned by it, and on all credits arising from the sales of the merchandise. [Plaintiff] may withdraw this agency by giving us six months' notice," etc.   Accompanying such declaration was defendants' letter of the same import.   Afterwards, one of defendants wrote plaintiff, "I have established your house on the most solid basis.   Your goods are known from the Atlantic to the Pacific. * * *   As I have written you, the house is yours, and you have an exclusive right to ownership," etc.   Again defendants wrote plaintiff: "We have always considered ourselves as your agents, and are considered such by you, as appears from your last letter. * * *   If we do not receive a satisfactory answer by cable or letter, we shall have no alternative but to place your stock in warehouse." *Held,* that the evidence established defendants' agency, and plaintiff's ownership of the property, though there were originally transactions between the parties which would tend to show that defendants were purchasers of the goods consigned; and there was no question for the jury.

Appeal from circuit court, New York county.

Replevin by La Societe Anonyme de l'Union des Papeteries against Samuel M. Marks and Jules Meyer.   Defendants had judgment, from which, and an order denying a motion for a new trial, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and O'BRIEN and BARRETT, JJ.

Coudert Brothers, (F. R. Coudert and Joseph Kling, of counsel,) for appellant.

David Tim, (Abram R. Kling, of counsel,) for respondents.

---

BARRETT, J.   The sole question in this case is as to the title to certain goods, for the recovery of which the action was brought.   The plaintiff claimed that it was the owner, and that the defendants held the goods as its agents.   The defendants denied the agency, and claimed that they had purchased the goods from the plaintiff.   The material evidence was documentary, and consisted mainly of the correspondence between the parties.   The testimony of the witnesses threw but little light upon the controversy, and it amounted substantially to their construction of the documents.   For instance, the witness Bevenot, whose testimony was read by the defendants, and who declared that the goods were not consigned, but sold, and that the plaintiff's books showed this, qualified his testimony by the statement that, as far as he could remember, such were the conditions existing between the parties, "as shown by correspondence and invoices."   There was, in fact, no oral testimony, in the least controlling, as to the arrangement between the parties, nor were the alleged admissions of any special value.   One witness testified that the defendant Meyer told him, upon a certain occasion, that the defendants were the plaintiff's agents.   Another witness testified that the plaintiff's submanager told him that the defendants were debtors to the plaintiff.   And so they were debtors, whether consignees or vendees. The defendant Marks testified that no goods were ever consigned to his firm, that the defendants had received no letter from the plaintiff referring to transactions between them as consignments, (thus summing up the entire correspondence,) and that they never received any commission for selling the plaintiff's goods.   All this was but Mr. Marks' construction of the correspondence, invoices, and other documents, including the entries made upon his own books.   There was no attempt on either side to prove an oral agreement between the parties, and consequently the agreement must be looked for in the documents.   Where the documents were susceptible of two views,—as perhaps they were, with reference to the earlier transactions.—the course of dealing between the parties became an important factor.   It was proper, therefore, to read these documents in the light of the testimony given by the witnesses.   From this testimony, it appeared that the defendants paid freight, insurance, and duties; that they were debited with the goods on the plaintiff's books; that they gave their notes therefor; and that a discount was at one time allowed them for cash, which, upon failure to pay cash, was withdrawn.   These and several other facts of a similar character tended to throw light upon the real nature of the original arrangement between the parties; and they would doubtless have been sufficient, standing alone, to justify the submission of the main question in controversy to the jury.   But whatever the original agreement, as evidenced by the earlier letters, (supplemented by the testimony as to the course of dealing,) may have been, all question as to the real relations between the parties was set at rest by the defendants' letter and declaration of May 11, 1888.   The declaration reads as follows:

"We, the undersigned, Saml. M. Marks and Jules Meyer, acknowledge by these presents that we are only the agents of the Societe Anonyme de l'Union des Papeteries at Bruxelles, without any right on the part of the company to take any part

in the purchase or sales; the company not being chargeable with the slightest responsibility in reference thereto. We therefore give and acknowledge to the said company an absolute right upon all merchandise consigned by it, and upon all credits arising from the sale of its merchandise. The societe may withdraw this agency by giving us six months' notice in advance, and the account will be liquidated for that period, to wit, six months after arrival of the notice. The liquidation will only comprise our debit balance.

"Saml. M. Marks and Jules Meyer."

The letter, so far as material, reads as follows:

"To give you every satisfaction, we send you herewith a declaration by which we recognize that we are only your agents, and that, although working at our own risks, you have, none the less, an absolute right upon all merchandise coming from you, and on all the credits arising from our sales of your articles. This instrument, under private signature, is what is called, in legal terms, in America, a 'lien,' and binds third parties."

These documents admit of no misconstruction. They were deliberately written by the defendants, and sent to the plaintiff to settle all question as to their relations; and these relations, as thus specified, established, and settled, were fully acknowledged in subsequent communications. On the 7th of the following December, Mr. Meyer wrote to the plaintiff with regard to the approaching expiration of his contract with Mr. Marks, calling its attention to his "two years of assiduous work," and to the fact that Mr. Marks' position had been only secondary. He said that he had reached the point "of gathering the fruit," and that he proposed to the plaintiff "to continue as heretofore under the same conditions." In this letter he adds:

"I have established your house upon the most solid basis. Your goods are known from the Atlantic to the Pacific. * * * As I have written you, the house is yours and you have an exclusive right to ownership, as I have told you, and upon the conditions indicated."

In March of the following year, both defendants wrote to the plaintiff, complaining of the latter's delay in communicating to them the decision of its board of directors with regard to future transactions. In this letter the defendants use the following language:

"We have taken and received orders, and nothing is left us but to notify our customers (customers which we consider your own) that it is impossible for us to execute the orders."

And also this:

"We have always considered ourselves as your agents, and are considered such by you, as appears from your last letter. We therefore do not understand what you say about borrowing from bankers on your stock, which would alter our position as depositaries into that of debtors, and the stock, which is yours at present, would become our property, without any preference in your favor."

Again, on the 2d of April, 1889, the defendants refer to the stock on hand in this wise:

"If we do not receive a satisfactory answer by cable or letter, we shall have no alternative but to place your stock in warehouse."

Indeed, it was not until the 17th of May, 1889, when the relations between the parties had become strained, that the agency was questioned. This letter of May 17, 1889, was a specious attempt to avoid the effect of the declaration and letter of March 11, 1888, and of the subsequently acknowledged relations thereunder. In this letter the de-

fendants pretend that the declaration in question was a mere unaccepted offer.   But this pretense was frivolous, in view of the correspondence which followed the declaration, and in view of the fact that the declaration itself, resulting, as it did, from the defendants' willingness to give the plaintiff "every satisfaction," was evidently solicited.   At all events, the declaration was received by the plaintiff, and retained, without objection or suggestion of inaccuracy, for upwards of a year.   That was a plain acquiescence in its correctness as an embodiment of its relations with the defendants, and this acquiescence was emphasized by the receipt, without comment, of the letters which followed.   The defendants' letter of May 17, 1889, was not an honest statement of their views with respect to this declaration.   They knew well enough that it had been accepted, but it served their ulterior purposes to put forward at that time the shadowy distinction between a formal acceptance and a tacit, but well-understood, acceptance.   The defendants were plainly bound by this declaration, and by the correspondence which accompanied and followed it.   It conclusively established their agency, and the plaintiff's ownership of the property in question.   In our judgment, the case should not have been submitted to the jury for their opinion upon the mass of confusing documents which led up to the crucial and conclusive declaration in question, but a verdict should have been directed for the plaintiff upon the legal effect of this declaration, and the accompanying and subsequent letters.   The judgment should therefore be reversed, and a new trial ordered, with costs to the appellant, to abide the event. All concur.